SHELL OIL COMPANY, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-APPELLANT, AND TOWN OF MORRISTOWN, A MUNICIPAL CORPORATION, INTERVENOR PLAINTIFF-APPELLANT, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF HANOVER, *ET AL.,* DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 20, 1961—Decided January 22, 1962.

Before Judges CONFORD, FREUND and LABRECQUE.

*Mr. Edward L. C. Vogt* argued the cause for plaintiffs-appellants (*Messrs. Schenck, Smith & King,* attorneys for plaintiff-appellant; *Mr. E. Marco Stirone,* attorney for intervenor plaintiff-appellant, and on the brief).

*Mr. Harry L. Sears* argued the cause for defendants-respondents (*Messrs. Young and Sears,* attorneys; *Mr. William P. Westling,* on the brief; *Mr. Sears,* of counsel).

The opinion of the court was delivered by

CONFORD, S. J. A. D.    Plaintiff was denied an application for a variance from the zoning ordinance of the Township of Hanover to erect a gasoline service station within the boundaries of a 300-acre tract of land owned by the Town of Morristown in Hanover and used for the operation of an airport.    See *Aviation Services v. Bd. of Adjustment of Hanover Tp.,* 20 *N. J.* 275 (1956).    The variance was sought because Hanover's zoning ordinance places the *locus in quo* in a zone limited to uses for office buildings and research laboratories.    Plaintiff then brought this action in lieu of prerogative writs to set aside the action of the board of adjustment as arbitrary.    The Town of Morristown

intervened as a plaintiff for the purpose, among others, of making the claim that the land in question is part of the established airport it maintains at that location and is therefore beyond the purview of Hanover's zoning ordinance under the decision of the Supreme Court in the *Aviation Services* case, cited above. The Law Division held for the defendants, determining that the proposed gasoline station would not constitute a part of the "airport operation, as such"; that the property in question and a whole contiguous strip of land along Columbia Road was designed by the airport for commercial development in reality for the purpose of financing the airport operation, and not for the purpose of conducting the airport itself; that the ordinance classification was not unreasonable; and that plaintiff had made no effort to establish a case for a variance under *N. J. S. A.* 40:55–39(d) by submission of proofs directed to that end.

We think this case is subject to resolution by confining our consideration to whether the property is proposed to be put to a use reasonably accessorial to airport purposes and not unreasonably antagonistic to the zoning interests of Hanover. The *Aviation Services* case, *supra,* held this particular airport to be exempt from zoning control by Hanover, under *R. S.* 40:8–2, as amended by *L.* 1947, *c.* 85, authorizing establishment and operation of airports by municipalities within or without their boundaries. It added the monition, however, that the power was required to be "reasonably exercised in response to the public need, both present and that fairly to be anticipated." (20 *N. J.,* at *p.* 285) An instance of unreasonable exercise by a municipality of its right to maintain water supply facilities in another municipality is found in *Washington Tp., in Bergen County v. Ridgewood Village,* 26 *N. J.* 578 (1958), which interpreted the requirement in *Aviation Services* of reasonableness as calling for consideration by the proprietary municipality of the zoning plan of the site municipality and of nearby land uses. (*Id.,* at *p.* 585)

This airport has been operated by Morristown since 1946. Federal funds contributed to the original construction and later improvement of the project, but it is presently self-sustaining, deriving its income from leases of airport land for aviation purposes and from the sale of aviation gasoline. However, planned expansion of aviation facilities will require greater revenues. It is now the third largest non-military airport in the state in volume of traffic. The airport is situated in the southwesterly corner of Hanover. Columbia Road, a two-lane major artery connecting Morristown with Florham Park and points east, cuts through this corner for about two-thirds of a mile, and for half of this distance it marks the southerly boundary of the airport. In a revised zoning ordinance adopted after the *Aviation Services* case was decided, the township has zoned the area along Columbia Road as an office building and research laboratory zone to a depth of 150 feet on the northerly side of the road (airport property). The balance of the airport lies in an area zoned for highest residential use. At the present time the nearest gasoline stations are located as follows: four are 2.2 miles west of the airport, two are two miles to its east.

Although we are not passing upon the reasonableness of the zoning treatment of this property by Hanover, the nature of the surrounding area bears upon the application of the limitation imposed by the *Aviation Services* and *Washington Tp.* cases to the effect that the exercise of the airport maintenance power be reasonable in the light of neighboring conditions, surroundings and land uses. Columbia Road intersects Park Avenue about 300 feet west of the southwest corner of the airport property. There are no residences on either side of Columbia Road for a considerable distance east of the airport. No uses of the type for which the land is now zoned, with one possible exception, exist on that road. There are such nonconforming uses as an automobile showroom, a Public Service metering station, an animal hospital and a milk bar. The airport

dominates the character of the surrounding area, and the land is generally low and swampy.

The manager of the airport testified that the construction of the service station would contribute substantially to the airport as an integrated air-transport community. Its location at the perimeter of the airport, where the interior access road intersects Columbia Road, would serve the gasoline needs of visitors to, patrons and personnel of the airport, yet would be desirably removed from the area of direct aircraft operations. At the same time, the location is economically justifiable from the viewpoint of a station operator since it can draw custom from the through traffic along Columbia Road.

The *Aviation Services* case holds that it is incumbent upon the courts to "lend a liberal construction to the airport legislation, * * * to insure the benefits which were intended to flow to municipalities having the foresight to maintain these facilities." (20 *N. J.*, at *pp.* 285, 286) We think that canon calls for sustaining the proposed establishment of a gasoline service station by the Morristown Airport Commission at the location in question. It is within the lands acquired for use as an airport by Morristown. A gasoline station is a reasonable accessorial airport convenience to make available to all those persons having occasion to use or be present at the airport. *Cf. Bloomfield v. N. J. Highway Authority,* 18 *N. J.* 237 (1955); *Hill v. Collingswood,* 9 *N. J.* 369 (1952). The fact that the municipality will thereby be aided at the same time in meeting the expenses of the general airport operation surely should not derogate from the appropriateness of arranging for such a facility as part of a rounded and well-balanced airport community, absent prohibitory restrictions in the enabling legislation. Nor should the fact that the lessee-operator of the property will be able to conduct his business at a profit because of accrual of non-airport business affect the merits and appropriateness of the project from Morristown's standpoint as operator of the airport.

The main thrust of the defendants' position is that the proposed use is to be but one of a number of commercial uses to which Morristown plans eventually to devote the entire contiguous strip of airport land on Columbia Road —uses assertedly having no essential relationship to the conduct of an airport and therefore properly subject to Hanover's zoning regulations. However, nothing we say here is intended to extend *carte blanche* to Morristown in the selection of prospective commercial uses for any part of the airport land. Any such undertaking, upon challenge, will be subject to independent appraisal by the court as to its reasonable and appropriate relationship with an airport operation and its reasonable regard for lawful neighboring zoning regulations and existing land uses. The parties certainly may not take our decision in the present case as necessarily indicating approval of anything like a general shopping center or area along this strip as purportedly accessorial to an airport of this character. But Hanover's zoning regulations cannot *ipso facto* veto a particular accessorial use, if otherwise reasonable and appropriate for an airport. We find the use here proposed by plaintiffs to be a proper accessory to an airport, appropriate for the present and reasonably prospective needs of the airport and not unreasonably harmful to Hanover's interests.

Judgment reversed; no costs.